# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Michael Scott | : CIVIL ACTION |
| Plaintiff, | : |
| | : NO. 3:11-cv-1790 |
| v. | : |
| | : (HON. A. RICHARD CAPUTO) |
| GEICO General Insurance Company | : |
| Defendant. | : |

## DEFENDANT'S, GEICO GENERAL INSURANCE COMPANY, STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to LR 56.1, Defendant, GEICO General Insurance Company (hereinafter referred to as "GEICO"), submits its Statement of Undisputed Material Facts, in numbered paragraphs:

## I.   THE PLEADINGS

1.   Plaintiff initiated this action on August 31, 2011 in the Court of Common Pleas of Schuylkill County. Plaintiff asserted claims for (1) breach of contract and (2) bad faith. See Court Document 1046-1 at ¶¶6-10.

2.   GEICO removed the action to this Court on September 27, 2011, based upon diversity of citizenship. Court Document 1046 at 2-4.

3.     GEICO served Plaintiff with Interrogatories, Requests for Production of

Documents, and Requests for Admission on February 2, 2012. A true and correct

copy of these discovery requests, along with a copy of Plaintiff Michael Scott's

Responses, and Supplemental Response (collectively, "Plaintiff's Admissions"),

are attached hereto as Exhibit "A."

## II.   THE POLICY

4.     Defendant, GEICO, insured Plaintiff, Michael Scott, and his wife, Tina

Scott, under Pennsylvania Family Automobile Insurance Policy No. 4056267612

("Policy"), with effective dates between July 8, 2006 and January 8, 2007.

Plaintiff's Responses Exhibit "A," at ¶1; Deposition of Allan Windt, attached

hereto as Exhibit "B," at 43. A true and correct copy of the Policy is attached

hereto as Exhibit "C."

5.     Policy No. 4056267612, referenced above in Paragraph 4 and attached as

Exhibit "C," provides underinsured motorist ("UIM") benefits of $100,000 per

person and $200,000 per accident. Since Mr. Scott insured three motor vehicles

with Defendant and elected to stack his coverage, he had UIM benefits of $300,000

per person and $600,000 per accident. Plaintiff's Admissions, Exhibit "A," at ¶2;

Family Automobile Policy Renewal Declarations for Policy No. 4056-26-76-12,

Exhibit "C," at GEICO 1105-1106.

6.     The Policy at Section V, General Conditions, provides in pertinent part:

3.    CHANGES
The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

Pennsylvania Family Automobile Insurance Policy No. 4056-26-76-12, Exhibit

"C," at GEICO 1123.

7.    The Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits) provides, in pertinent part:

LIMIT OF LIABILITY
1. For you or a household member, the most we will pay for all damages including those for care or loss of services due to bodily injury to one person in any one accident is the sum of the "each person" limits for Underinsured Motorist Coverage shown in the declarations applicable to each vehicle.

Policy, attached to the Motion as Exhibit "C," at GEICO 1136.

8.    The Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits), states that in an arbitration of a dispute arising

under the Policy, "[t]he arbitrators cannot enter an award in excess of the policy

limits." Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits), Exhibit "C," at GEICO 1137; Deposition of David

J. Rossi, Esquire, attached hereto as Exhibit "D," at 17-18.

9.    The Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits) provides:

4. PROOF OF CLAIM-MEDICAL REPORTS

-3-

As soon as possible, the *insured* or other persons making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of injuries, treatment, and other facts which may affect the amount payable.

Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The *insured will* submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records.

Policy, Exhibit "C," at GEICO 1138; Rossi Dep., Exhibit "D," at 25-26; Report of

John Edmonds and accompanying Curriculum Vitae, attached hereto as Exhibit

"E," at 5.

10.    The Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits) provides:

**ARBITRATION**
If we and *an insured* do not agree:

1. whether that person is legally entitled to recover damages from the owner or operator of an *underinsured motor vehicle;* **or**
2. as to the amount of the damages;

either party may make a written demand for arbitration. Arbitration shall be conducted in accordance with the provisions of the Pennsylvania Arbitration Act of 1927. Each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

> The arbitrators will then hear and determine only the question or
> questions of legal liability and/or damages that are in dispute.
>
> . . .
>
> *The arbitrators cannot enter an award in excess of the policy limits.*
> Unless both parties agree otherwise, arbitration will take place in the
> county in which the ***insured*** lives. Local rules of law as to procedure
> and evidence will apply. A decision agreed to by two of the arbitrators
> will be binding.

Policy Amendment, Underinsured Motorist Coverage Pennsylvania (Stacked

Limits) (emphasis added), Exhibit "C," at GEICO 1137; Edmonds Report, Exhibit

"E," at 13.

11.     The Automobile Policy Amendment, Underinsured Motorist Coverage

Pennsylvania (Stacked Limits) provides:

> 3.     Action Against Us
>
> Suit will not lie against us unless the ***insured*** and his legal
> representative have fully complied with all the policy terms.

Automobile Policy Amendment, Underinsured Motorist Coverage Pennsylvania

(Stacked Limits), Exhibit "C," at GEICO 1138.

12.     The named insureds, Tina and Michael Scott, are residents of Pennsylvania.

Deposition of Allan Windt, Exhibit "B," at 43.

13.     Under Pennsylvania choice of law rules, the insurance contract is governed

by the law of the state in which the contract is made. The Scott Pennsylvania

Policy should be interpreted to conform to the statutes of Pennsylvania. Windt

Dep., Exhibit "B," at 44.

14.    GEICO's claim handling with regard to the Scott UIM claim should be

evaluated in accordance with the terms of the GEICO Policy and Pennsylvania law

as interpreted by Pennsylvania state and federal courts. Windt Dep., Exhibit "B," at

44.

## III.   <u>THE CLAIM</u>

15.    The First Count of the Complaint alleges Breach of Contract. Court

Document 1046-1 at ¶¶20-23.

16.    In November 2004, Plaintiff was involved in an accident in which he fell 22

feet from a ladder and injured his lower back, requiring surgery in 2005.

Examination Under Oath of Michael Scott, attached hereto as Exhibit "F," at 17;

Independent Medical Examination Report of V. Benjamin Nakkache, M.D.

(November 10, 2009), attached hereto as Exhibit "G," at GEICO 0162.

17.    In the summer of 2005, prior to the July 11, 2006, motor vehicle accident,

Plaintiff underwent a L5-S1 microdiskectomy for a large L5-S1 disc herniation

producing low back pain radiating to his right leg. Plaintiff's Admissions, Exhibit

"A," at ¶50; Claims File, attached hereto as Exhibit "H," at GEICO 0622-0685;

Deposition of Evelyn Cropp, attached hereto as Exhibit "I," at 67; Deposition of

Jean Siwula, attached hereto as Exhibit "J," at 107, 154; Deposition of Billy Tibbs,

10254187v.1

attached hereto as Exhibit "K," at 75; see also Deposition of Carl Silber, attached

hereto as Exhibit "L," at 108.

18.     On July 11, 2006, Plaintiff, his wife, Tina Scott, and Joanne Kinder, an Erie

Insurance Exchange insured, were involved in a motor vehicle accident (the

"Accident"). The Accident caused injuries to Plaintiff and Tina Scott. See

Plaintiff's Admissions, Exhibit "A," at ¶3; Court Document 1046-1 at ¶4.

19.     The Accident occurred at the intersection of Pa. Route 309 and Pa. Route

443 in West Penn Township, Schuylkill County, Pennsylvania. Claims File,

Exhibit "H," at GEICO 0548-54.

20.     At the time of the Accident, Plaintiff and Tina Scott were traveling south on

Pa. Route 309 in a 1997 Jeep. The tortfeasor, Joanne Kinder, was traveling north

on Pa. Route 309 in a 1999 Buick sedan. Claims File, Exhibit "H," at GEICO

0549, 0550, 0553.

21.     On July 12, 2006, Plaintiff reported the Accident to GEICO. Plaintiff's

Admissions, Exhibit "A," at ¶4; Edmonds Report, Exhibit "E," at 5.

22.     On July 20, 2006, counsel for Plaintiff, Latona and Keller, sent a letter to

GEICO, presenting an UIM claim with respect to the Accident. Plaintiff's

Admissions, Exhibit "A," at ¶5. GEICO received that letter on July 24, 2006.

Claims File, Exhibit "H," at GEICO 0526-27, 0529.

23.     On August 4, 2006, GEICO sent a letter to counsel for Plaintiff, Latona and

Keller, notifying Plaintiff's counsel of the assignment of the UIM claim to a

GEICO claims examiner, requesting that Plaintiff forward all special damages to

GEICO, asking Plaintiff to sign authorizations for the release of medical and wage

information directly from providers and employers, requesting permission to

obtain medical records from Plaintiff's Personal Injury Protection claims file with

GEICO, asking for a copy of the Police Accident Report, requesting that Plaintiff

provide a list of all of Plaintiff's medical providers for the five years prior to the

date of Accident, and seeking the amount of the available insurance coverage from

Joanne Kinder's insurance carrier, Erie Insurance. Plaintiff's Admissions, Exhibit

"A," at ¶6; Claims File, Exhibit "H," at GEICO 0519-24, 0541; Tibbs Dep.,

Exhibit "K," at 16, 112; Edmonds Report, Exhibit "E," at 5.

24.     On August 10, 2006, counsel for the Plaintiff, Zane, Zane & Rossi, sent a

letter of representation to GEICO presenting UIM claims upon behalf of Tina and

Michael Scott. Plaintiff's Admissions, Exhibit "A," at ¶7; Claims File, Exhibit

"H," at GEICO 0517; Rossi Dep., Exhibit "D," at 26.

25.     On August 14, 2006, GEICO received counsel for the Plaintiff's letter of

August 10, 2006, referenced in Paragraph 23. Claims File, Exhibit "H," at GEICO

0517-18; Tibbs Dep., Exhibit "K," at 115.

26.     On August 16, 2006, GEICO obtained the Police Report for the Accident.

Claims File, Exhibit "H," at GEICO 0014; see also Report of John Edmonds,

Exhibit "E," at 5.

27.     On August 28, 2006, GEICO sent a letter to new counsel for Plaintiff, Zane,

Zane & Rossi, notifying Plaintiff's counsel of the assignment of the UIM claim to

a GEICO claims examiner, requesting that Plaintiff forward all special damages to

GEICO, asking Plaintiff to sign authorizations for the release of medical and wage

information directly from medical providers and employers, requesting that

Plaintiff provide a list of all of Plaintiff's medical providers for the five years prior

to the date of Accident, and requesting permission to obtain medical records from

Plaintiff's Personal Injury Protection claims file with GEICO. Plaintiff's

Admissions, Exhibit "A," at ¶8; Claims File, Exhibit "H," at GEICO 0511-16,

0541; Tibbs Dep., Exhibit "K," at 115; Rossi Dep., Exhibit "D," at 26-27;

Edmonds Report, Exhibit "E," at 5.

28.     The wage information forms sent by GEICO to Latona and Keller on August

4, 2006, and to Zane, Zane & Rossi on August 28, 2006, requested information

pertaining to Plaintiff's employer, dates of employment, job title, salary, and work

missed. Claims File, Exhibit "H," at GEICO 0513; Tibbs Dep., Exhibit "K," at

114; Rossi Dep., Exhibit "D," at 27; Windt Dep., Exhibit "B," at 114; Edmonds

Report, as Exhibit "E," at 5.

29.     The medical information forms sent by GEICO to Latona and Keller on

10254187v.1

August 4, 2006, and to Zane, Zane & Rossi on August 28, 2006, requested a listing

of medical providers from which/whom Plaintiff had sought medical treatment, the

amount of medical bills, and HIPAA-compliant authorization forms signed by

Michael and Tina Scott. Tibbs Dep., Exhibit "K," at 114; Rossi Dep., Exhibit "D,"

at 32; Windt Dep., Exhibit "B," at 114; Edmonds Report, Exhibit "E," at 5.

30.     It is prudent and customary for representatives of the insurer to send counsel

for the claimant medical authorizations for the insured to sign. Windt Dep., Exhibit

"B," at 32.

31.     As a company practice, GEICO uses the wage and medical authorization

forms to obtain wage and medical records and evaluate claims. Tibbs Dep., Exhibit

"K," at 114. Use of a medical records authorization allows an insurer to get

medical records directly from the provider.  If not signed, then the insurer must

rely upon counsel for the claimant to supply the requested medical records. Windt

Dep., Exhibit "B," at 117.

32.     Employers do not provide personnel records directly to GEICO without an

authorization. Tibbs Dep., Exhibit "K," at 114; Windt Dep., Exhibit "B," at 118. If

authorizations are signed by the insured, then the insurer can obtain medical and

wage records from the providers/employers on the insurer's own timetable. Windt

Dep., Exhibit "B," at 118.

33.     GEICO asked counsel for Plaintiff to provide a list of medical providers for

five years prior to the subject MVA in a letter dated August 28, 2006. Windt Dep.,

Exhibit "B," at 121.

34.     At no time during Billy Tibbs' handling of Plaintiff's claim did counsel for

the Plaintiff return the wage and medical authorization forms to GEICO sent by

GEICO on August 4 and 28, 2006, to GEICO. Tibbs Dep., Exhibit "K," at 115-16;

Rossi Dep., Exhibit "D," at 27; Edmonds Report, Exhibit "D," at 5.

35.     At no time during GEICO's handling of Plaintiff's claim did counsel for the

Plaintiff give GEICO written permission to view Plaintiff's first party Personal

Injury Protection (medical treatment and payments) file. Rossi Dep., Exhibit "D,"

at 28-29; Edmonds Report, Exhibit "E," at 5-6.

36.     At no time during Billy Tibbs' handling of Plaintiff's claim did Tibbs

receive notification from either Latona and Keller or Zane, Zane & Rossi that

Plaintiff's claim against the third party tortfeasor, Joanne Kinder, an Erie insured,

had been resolved. Tibbs Dep., Exhibit "K," at 113.

37.     The failure of Plaintiff's attorneys to provide the wage and medical

authorization forms requested by GEICO on August 4, 2006, and August 28, 2006,

respectively, "[h]indered" investigation of Plaintiff's claim in "that [GEICO] could

have assisted in perhaps getting the records in a quicker fashion." Tibbs Dep.,

Exhibit "K," at 116.

38.     GEICO Claims Home Office attorney, Carl Silber, testified that "[p]erhaps if

medical authorizations were provided and wage authorizations were provided, as requested previously, then we could have secured the same. Perhaps if counsel provided that at that time, the matter could have been evaluated. But since we had very minimal information, we were unable to come to a determination that the documents provided warranted a payment in excess of $100,000 [as of June 1, 2007]." Silber Dep., Exhibit "L," at 137-38.

39.    On September 5, 2006, counsel for the Plaintiff sent GEICO a letter with copies of billing records from Medical Imaging. Plaintiff's Admissions, Exhibit "A," at ¶9; Claims File, Exhibit "H," at GEICO 0509-10, 0579-89; Tibbs Dep., Exhibit "K," at 32; Rossi Dep., Exhibit "D," at 34.

40.    On September 26, 2006, Plaintiff's file was placed on control with Claims Home Office, and transmitted to Carl Silber, Esq., for supervision. Silber Dep., Exhibit "L," at 91.

41.    On September 26, 2006, GEICO telephoned Erie Insurance Exchange, insurer of the tortfeasor, Joanne Kinder, seeking to determine whether Erie was aware of any other coverage for its insured and to request a confirmation of the tortfeasor's policy limits. Claims File, Exhibit "H," at GEICO 0539; Tibbs Dep., Exhibit "K," at 34.

42.    On October 4, 2006, counsel for the Plaintiff sent GEICO a letter with medical records of post-accident treatment for Plaintiff from Wyoming Valley Pain

Center, Lehigh Magnetic Imaging Center, Hazleton Imaging, Physical Therapy Specialists, and Lehigh Valley Hospital. Plaintiff's Admissions, Exhibit "A," at ¶10; Rossi Dep., Exhibit "D," at 34-35; Claims File, Exhibit "H," at GEICO 0507-508; Edmonds Report, Exhibit "E," at 6.

43.     On or about October 16, 2006, GEICO telephoned counsel for the Plaintiff. Counsel for the Plaintiff informed GEICO that Tina Scott had given birth to a female the previous Monday and that both Plaintiff's wife and the child were healthy. GEICO asked whether counsel for the Plaintiff had obtained confirmation of the tortfeasor's, Joanne Kinder, policy limits, to which counsel for the Plaintiff responded he had, explaining that Kinder would be tendering her policy limits shortly, at which time he would inform GEICO. Counsel for the Plaintiff informed GEICO that Tina Scott had consulted a vocational expert whose report counsel for the Plaintiff would provide GEICO. Claims File, Exhibit "H," at GEICO 0539; Tibbs Dep., Exhibit "K," at 36.

44.     On or about November 10, 2006, GEICO telephoned counsel for the Plaintiff and spoke to his secretary regarding the status of counsel for the Plaintiff's efforts to secure confirmation of the tortfeasor's auto insurance coverage. Claims File, Exhibit "H," at GEICO 0538; Tibbs Dep., Exhibit "K," at 52; Edmonds Report, Exhibit "E," at 6.

45.     On or about November 16, 2006, counsel for the Plaintiff called GEICO and

-13-

informed it that Erie Insurance Exchange would not release the declaration page of

the tortfeasor without her permission and that Erie had still not confirmed the

tortfeasor's coverage. Counsel for the Plaintiff stated that he wanted to sue the

tortfeasor; that the tortfeasor had assets which were joined to her husband; that

GEICO could perform an asset-check of the tortfeasor, which he advised be done

on a case-by-case basis; that Plaintiff had not returned to work and may have

surgery for his brachial plexus injury; and that Plaintiff's child was fine. Claims

File, Exhibit "H," at GEICO 0538; Tibbs Dep., Exhibit "K," at 52-53; Silber Dep.,

Exhibit "L," at 97-98; Edmonds Report, Exhibit "E," at 6.

46.    On November 16, 2006, GEICO received a telephone call from Virginia

Turner of Erie Insurance Exchange. Turner informed GEICO that Attorney Rossi

would be sending an affidavit of no other insurance. GEICO advised Turner that it

was waiting for confirmation of the tortfeasor's coverage, but Turner explained

that Erie could not release the declaration page at that time. Claims File, Exhibit

"H," at GEICO 0538; Tibbs Dep., Exhibit "K," at 53-54.

47.    On November 27, 2006, Claims Home Office Attorney Carl Silber received

an e-mail transmittal from Claims Examiner Billy Tibbs providing an update on

the handling of Plaintiff's claim. Silber Dep., Exhibit "L," at 97; Claims File,

Exhibit "H," at GEICO 0154.

48.    On December 27, 2006, GEICO telephoned counsel for the Plaintiff, at

which time he informed GEICO that he possessed the 10-page report of psychiatrist Dr. Noble which he believed he sent GEICO before the holidays. The GEICO claims examiner stated that he had been out of the office but that he did not believe he had the report. Counsel for the Plaintiff explained that he had been waiting to send Dr. Noble's report along with the vocational expert report. GEICO inquired about the status of the claim against the tortfeasor. Counsel for the Plaintiff explained that he had not obtained confirmation of the tortfeasor's auto insurance coverage and that he had sent an affidavit of no other coverage to Erie to forward to the tortfeasor but it had not been returned. The GEICO claims examiner stated that once it received the confirmation of coverage, he would seek authority to accept the proceeds of her policy. Counsel for the Plaintiff informed the claims examiner that Plaintiff had not returned to work, was losing seniority and risked losing his job as a production manager. He further stated that the Scotts had begun a business of building log homes, that they were avid outdoors enthusiasts and enjoyed climbing and rafting. Counsel for the Plaintiff also informed GEICO that Plaintiff had not been released by his physicians to return to work but would decide within the next week whether to disobey the doctor's orders and return to work anyway. Finally, counsel for the Plaintiff also explained that Michael Scott and his doctors were still considering surgery. Claims File, Exhibit "H," at GEICO 0153, 0537; Tibbs Dep., Exhibit "K," at 54-55; Silber Dep., Exhibit "L," at 99-

100; Edmonds Report, Exhibit "E," at 6.

49.     On December 27, 2006, GEICO telephoned Virginia Turner of Erie and left a voicemail message inquiring as to whether Erie had authority to disclose the tortfeasor's policy limits and requesting that Turner call GEICO back. Claims File, Exhibit "H," at GEICO 0537; Tibbs Dep., Exhibit "K," at 55.

50.     On January 17, 2007, GEICO received a letter from counsel for Plaintiff enclosing a report of Dr. Noble, a report from vocational expert John Risser, and a demand for the full amount ($300,000) of UIM coverage for Tina Scott's claim. Claims File, Exhibit "H," at GEICO 0537; Tibbs Dep., Exhibit "K," at 56; Edmonds Report Exhibit "E," at 6; Plaintiff's Responses to Defendant's Request for Production of Documents, Exhibit "A."

51.     On January 17, 2007, GEICO called Virginia Turner of Erie and left a voicemail message inquiring as to whether the tortfeasor had signed the affidavit of no other insurance and whether Erie had gotten permission to release her declaration page. Claims File, Exhibit "H," at GEICO 0537; Tibbs Dep., Exhibit "K," at 56.

52.     On January 17, 2007, GEICO called counsel for the Plaintiff and inquired as to whether he had obtained the tortfeasor's affidavit of no other insurance and declaration page. Counsel for the Plaintiff stated that he had both items. GEICO requested that Counsel for the Plaintiff fax both items to GEICO. Claims File,

-16-

Exhibit "H," at GEICO 0537; Tibbs Dep., Exhibit "K," at 56.

53.     On January 24, 2007, GEICO telephoned counsel for the Plaintiff and left a message with his secretary inquiring as to Plaintiff's status and whether he had returned to work. Claims File, Exhibit "H," at GEICO 0536; Tibbs Dep., Exhibit "K," at 58.

54.     On February 14, 2007, GEICO paid Plaintiff's wife, Tina Scott, policy limits of $300,000 for her claim without requiring further documentation. Ms. Scott's injuries included: (1) transverse fracture of the distal humerus shaft with mild displacement; (2) a transverse comminuted fracture of the proximal shafts of both the radius and the ulna; (3) a large open wound to the right forearm; (4) a right ankle sprain; (5) facial abrasions; (6) surgery; (7) skin grafting; and (8) a disrupted third trimester of pregnancy. Rossi Dep., Exhibit "D," at 139-40; Claims File, Exhibit "H," at GEICO 0536; Edmonds Report, Exhibit "E," at 17; Silber Dep., Exhibit "L," at 102-103.

55.     On February 23, 2007, GEICO telephoned counsel for the Plaintiff and left a message with his secretary inquiring as to Plaintiff's treatment status and whether he had returned to work. Claims File, Exhibit "H," at GEICO 0536; Tibbs Dep., Exhibit "K," at 60; Edmonds Report, Exhibit "E," at 7.

56.     On March 21, 2007, GEICO telephoned counsel for the Plaintiff and left a message with his secretary inquiring as to Plaintiff's treatment status and whether

10254187v.1

he had returned to work. Claims File, Exhibit "H," at GEICO 0536; Tibbs Dep.,

Exhibit "K," at 60; Edmonds Report, Exhibit "E," at 7.

57.     On March 23, 2007, GEICO received a telephone call from Virginia Turner

of Erie, at which time she advised she had received no information from or about

Plaintiff regarding his injuries or claim against the tortfeasor, Kinder. Claims File,

Exhibit "H," at GEICO 0535; Tibbs Dep., Exhibit "K," at 60; Edmonds Report,

Exhibit "E," at 7.

58.     On April 23, 2007, GEICO telephoned counsel for the Plaintiff and left a

message with his secretary requesting that counsel for the Plaintiff return the

telephone call. Claims File, Exhibit "H," at GEICO 0150, 0535; Tibbs Dep.,

Exhibit "K," at 60-61; Silber Dep., Exhibit "L," at 105.

59.     On April 23, 2007, GEICO sent counsel for the Plaintiff a letter requesting

an update with respect to Michael Scott's current injury and treatment status and

whether or not he had returned to work. Plaintiff's Admissions, Exhibit "A," at

¶11; Claims File, Exhibit "H," at GEICO 0150, 0505; Tibbs Dep., Exhibit "K," at

60-61; Silber Dep., Exhibit "L," at 105; Edmonds Report, Exhibit "E," at 7.

60.     On or about May 18, 2007, GEICO telephoned counsel for the Plaintiff, at

which time counsel for the Plaintiff stated that Michael Scott had returned to work

but that his brachial plexus injury would require surgery, which had not yet been

scheduled. Counsel for the Plaintiff also stated that he had a packet of Michael

-18-

Scott's records and would sent it "early next week." Claims File, Exhibit "H," at

GEICO 0149, 0535; Tibbs Dep., Exhibit "K," at 61; Silber Dep., Exhibit "L," at

105-106; Edmonds Report, Exhibit "E," at 7.

61.    On or about May 21, 2007, counsel for the Plaintiff sent GEICO a letter

containing copies of medical reports, employment records, and billing statements

concerning Michael Scott. The medical records included new treatment records

from Medical Imaging and Allentown Anesthesiology, a first report from Ross

Noble, M.D., and lien information concerning Blue Cross/Blue Shield. The letter

made a demand for policy limits in the sum of $300,000 as full and final settlement

of the UIM claim. The letter made the following allegations as to medical issues

and expenses and wage loss. First, Plaintiff claimed he "suffer[s] from C5-6

cervical disc herniation with posterior headaches and neck pain, left brachial

plexus injury with loss of sensation and muscle weakness, and impingement

syndrome of the left shoulder due to left rotator cuff injury. All of these diagnoses

are directly related to Michael Scott's accident of July 11, 2006 and are permanent

in nature." He also alleged that he had "incurred medical expenses in an amount in

excess of $30,000 to date, $11,863.16 of that amount was paid by Mr. Scott's

major medical insurer, CareFirst Blue Cross Blue Shield." Second, Plaintiff alleged

that he had suffered the following wage losses:

- 29 weeks of employment. This included loss of 1240 regular work hours at the rate of $27.75 per hour ($34,410.00); loss of 200.5 overtime hours at the rate of $41.62 per hour ($8,344.81); loss of four hours of double-time hours at the rate of $83.24 ($332.96);

- work incentive bonus of 7% of base salary of $57,705.18 ($4,039.36);

- $5,183.98 in 401k retirement benefits;

- $1,032.30 in pension contributions and annual issuance of company stock at 3% of base salary;

- loss of job position resulting in a less desirable schedule and loss of future overtime hours of approximately $2,000 per year;

- loss of membership in the Confined Space Rescue team; Health & Wellness Comity; and First Responder Units;

- loss of over $35,000 in income from his log home sales business;

- loss of $900.00 for cost of paying a plumber to complete plumbing installation on a cabin, which, if healthy, Plaintiff would otherwise have done himself;

- loss of $9,600 in income from excavation business for work on five foundations and trenches totaling 160 hours at $60.00 per hour;

- inability to market his business at log home trade shows;

Plaintiff's Admissions, Exhibit "A," at ¶12; Claims File, Exhibit "H," at GEICO

0149, 0496-503; Rossi Dep., Exhibit "D," at 35; Silber Dep., Exhibit "L," at 106;

Edmonds Report, Exhibit "E," at 7.

62.    Carl Silber, GEICO Claims Home Office attorney, testified that Billy Tibbs

had not received the information he had sought previously from counsel for

Plaintiff in order that he could complete his evaluation of Michael Scott's UIM

claim. Silber Dep., Exhibit "L," at 131-132.

63.    Carl Silber, GEICO Claims Home Office attorney, testified that "the matter

was not in a posture to evaluate at that time" because "there was still information

that needed to be secured." Silber Dep., Exhibit "L," at 131.

64.    Carl Silber, GEICO Claims Home Office attorney, testified that in order to

fully evaluate Plaintiff's claim, Billy Tibbs, Claims Examiner needed:

> [P]rior records with respect to the prior injury. He . . . needed
> documentation with respect to the lost wage claim. He . . . needed
> documentation regarding the amount of time [Plaintiff] actually was
> out of work. He needed documentation with respect to the employer's
> confirmation of alleged losses of incentive bonuses, 401 retirement
> benefits and pension contribution and loss of the issuance of company
> stock. None of that information was provided [as of June 1, 2007].
>
> No information was provided due to the loss of his position with
> respect to Constellation Energy. There was also no documentation
> provided regarding his log home company or excavation company.
> There was no documentation provided that indicated that on his—on
> how, what his intentions were with respect to the log home business.
>
> All of this documentation was requested by Mr. Tibbs. Again, a
> significant amount of it was requested previously, and Mr. Tibbs

certainly cannot make an evaluation of a case when a significant
amount of documentation is not in the file.

He cannot take Mr. Rossi [counsel for Plaintiff] at his word. He
cannot take anyone at their word that such a, that such damages were
incurred.

Silber Dep., Exhibit "L," at 132.

65.     Carl Silber, GEICO Claims Home Office attorney, testified that GEICO

evaluated the claim as not exceeding $100,000 as of June 1, 2007, because Plaintiff

had not submitted documentation relating to a prior fall and no documentation

supporting Plaintiff's claims for past lost wages, future lost wages, loss of earning

capacity, or loss of benefits. Silber Dep., Exhibit "L," at 132-35; Edmonds Report,

Exhibit "E," at 7.

66.     On June 1, 2007, GEICO telephoned counsel for Plaintiff. GEICO informed

him that it had reviewed Plaintiff's demand package and that the claim did not

appear to have a value of more than the tortfeasor's $100,000 policy limits. GEICO

also informed counsel for Plaintiff that he had not supplied employment and

medical records that GEICO had sought since August 2006. Claims File, Exhibit

"H," at GEICO 0534-35; Tibbs Dep., Exhibit "K," at 90-91; Edmonds Report,

Exhibit "E," at 8.

67.     On or about June 1, 2007, GEICO sent counsel for Plaintiff a letter stating

that the documentation provided to date did not support a value of Plaintiff's UIM

claim more than the underlying policy limits of $100,000 of Joanne Kinder. In the

letter, GEICO requested income tax records for the last three years, additional

medical treatment records for the time period after December 6, 2006, and

employment records from Constellation Energy Group concerning claimed loss of

seniority in job position, incentive bonus, 401 retirement benefits, pension

contributions, company stock, and documentation to support income losses from

Hollow Mountain Log Homes and excavating businesses. The letter also provided

record release authorizations for Plaintiff's medical and employment records and

stated that GEICO would be "happy to assist [Plaintiff's counsel] in obtaining the

documentation necessary to support [his] client's claim." Plaintiff's Admissions,

Exhibit "A," at ¶13; Rossi Dep., Exhibit "D," at 73-74, 86, 87; Claims File, Exhibit

"H," at GEICO 0143-46, 0493-95; Silber Dep., Exhibit "L," at 106-107; Edmonds

Report, Exhibit "E," at 7.

68.    "An insurer is not guilty of bad faith simply because it chooses to conduct a

relevant investigation before deciding whether to provide policy benefits." Windt

Dep., Exhibit "B," at 31-32.

69.    "To put it in other words, an insurer can hardly be guilty of bad faith

because it exercised caution before paying or denying benefits." Windt Dep.,

Exhibit "B," at 32.

70.    "If the information timely sought by the insurer is potentially relevant, the investigation would not constitute a bad faith dilatory tactic." Windt Dep., Exhibit "B," at 32.

71.    In general, "the insurer has the right to verify its obligation to pay whenever it chooses, and for whatever reason it chooses." Windt Dep., Exhibit "B," at 38, 41.

72.    One of the reasons why an insurance company may have a reason to verify its obligation to pay was because the information that it requested has not been provided as proof of claim by its insured. Windt Dep., Exhibit "B," at 41.

73.    "In general, the burden is on the insured to demonstrate that a loss is encompassed by the general coverage provisions of the insurance contract." That burden extends to proof of medical expenses and lost wages. Windt Dep., Exhibit "B," at 42.

74.    "[A]n insurer is not obligated to resolve any uncertainty regarding the facts in favor of the insured." Windt Dep., Exhibit "B," at 42.

75.    GEICO's determination that Plaintiff's claim was not worth greater than $100,000 was based upon review of all records provided up to June 1, 2007, including (1) billing records from Medical Imaging; (2) medical records from Wyoming Valley Pain Center, Lehigh Valley Magnetic Imaging Center, Hazleton Imaging, Physical Therapy Specialists and Allentown Anesthesia Associates Lehigh Valley Hospital; (3) the first IME report of S. Ross Noble, M.D.; (4) the

-24-

vocational report of John S. Risser; and the office notes of James Weiss, M.D., of Orthopedic Associates of Allentown. See Tibbs Dep., Exhibit "K," at 74-75; Claims File, Exhibit "H," at GEICO 0493-5; Edmonds Report, Exhibit "E," at 7.

76.     GEICO's valuation of Plaintiff's UIM claim considered: (1) pain and suffering, which included mental distress and anxiety, loss of feeling of well-being, embarrassment and humiliation, and loss of ordinary pleasures and enjoyment of life; as well as (2) medical expenses not reimbursed by GEICO PIP benefits. Tibbs Dep., Exhibit "K," at 84-90.

77.     "Obviously, an insurer can, in good faith, delay payment based upon information that it does not have."  Windt Dep., Exhibit "B," at 32-33.

78.     "A lengthy delay in payment . . . could also be due to the insured failing to provide information that is reasonably requested by the insurer." Windt Dep., Exhibit "B," at 33.

79.     Plaintiff provided no further medical or income loss documentation to GEICO from June 1, 2007, to June 15, 2008. Plaintiff's Admissions, Exhibit "B" at ¶14 and Supplement; Rossi Dep., Exhibit "D," at 50-51, 53.

80.     Plaintiff at no time before arbitration provided his 2004 income tax returns as requested by GEICO in its letter of June 1, 2007. Rossi Dep., Exhibit "D," at 38, 106.

81.     Plaintiff at no time before arbitration submitted his 2005 income tax returns

as requested by GEICO in its letter of June 1, 2007. Rossi Dep., Exhibit "D," at 38-39, 106.

82.    Pre-accident income tax returns are helpful in determining pre-accident wages that a person was earning. Windt Dep., Exhibit "B," at 122.

83.    Plaintiff never supplied records from his excavation business as requested by GEICO in its letters of June 1, 2007, and June 15, 2009. Rossi Dep., Exhibit "D," at 94-95, 111-112.

84.    Plaintiff did not supply any medical authorizations until May 13, 2009. Rossi Dep., Exhibit "D," at 43, 48, 69; Claims File, Exhibit "H," at GEICO 0632; Edmonds Report, Exhibit "E," at 5.

85.    Plaintiff never gave GEICO permission to access his medical records in his PIP file. Rossi Dep., Exhibit "D," at 28-29;  Windt Dep., Exhibit "B," at 79; Edmonds Report, Exhibit "E," at 5-6.

86.    Plaintiff never provided a list of medical providers for five years prior to the date of Accident as requested by GEICO on August 4, 2006, and August 28, 2006. Rossi Dep., Exhibit "D," at 26-27; see also Claims File, Exhibit "H," at GEICO 0514.

87.    On June 25, 2007, GEICO telephoned counsel for the Plaintiff and left a voicemail requesting the documentation requested in its letter of June 1, 2007, his position on Plaintiff signing medical and employment authorizations, and asking

that counsel for the Plaintiff return the call. Claims File, Exhibit "H," at GEICO 0534; Tibbs Dep., Exhibit "K," at 95; Edmonds Report, Exhibit "E," at 8.

88.     On July 18, 2007, GEICO telephoned counsel for the Plaintiff requesting additional records and information to support Plaintiff's wage loss claim, and asked that he return the call. Claims File, Exhibit "H," at GEICO 0532; Tibbs Dep., Exhibit "K," at 97; Edmonds Report, Exhibit "E," at 8.

89.     On August 17, 2007, GEICO telephoned counsel for Plaintiff, spoke with a secretary, and requested the documentation requested in its letter of June 1, 2007. Claims File, Exhibit "H," at GEICO 0532; Tibbs Dep., Exhibit "K," at 97; Rossi Dep., Exhibit "D," at 56, 75; Edmonds Report, Exhibit "E," at 8.

90.     On August 17, 2007, GEICO telephoned Erie, insurer of the third party tortfeasor, Joanne Kinder, and left a voicemail inquiring as to whether Erie had received any of Plaintiff's records or made Plaintiff an offer of settlement. Claims File, Exhibit "H," at GEICO 0532; Edmonds Report, Exhibit "E," at 8.

91.     On September 17, 2007, GEICO telephoned counsel for Plaintiff and left a message with a secretary requesting a status update on the documentation requested in its letter of June 1, 2007. Claims File, Exhibit "H," at GEICO 0038; Cropp Dep., Exhibit "I," at 17; Rossi Dep., Exhibit "_D," at 57-58; Edmonds Report, Exhibit "E," at 8.

92.     On September 17, 2007, GEICO Claims Home Office attorney Carl Silber

received an update on the handling of Plaintiff's UIM claim from Claims Examiner Evelyn Cropp. Silber Dep., Exhibit "L," at 95; Claims File, Exhibit "H," at GEICO 0038-39.

93.     On September 18, 2007, counsel for Plaintiff telephoned GEICO and stated that he was in possession of information requested by GEICO in its letter of June 1, 2007, and would forward the information to GEICO. Cropp Dep., Exhibit "I," at 19; Claims File, Exhibit "H," at GEICO 0039. And yet, the requested information was not forthcoming. Edmonds Report, Exhibit "E," at 8.

94.     On October 26, 2007, GEICO telephoned counsel for Plaintiff requesting documentation requested in its letter of June 1, 2007. Claims File, Exhibit "H," at GEICO 0039; Edmonds Report, Exhibit "E," at 8.

95.     On November 13, 2007, GEICO noted in the claims file that no requested documentation had been received from Plaintiff to date. Cropp Dep., Exhibit "I," at 21; Claims File, Exhibit "H," at GEICO 0039-40; Silber Dep., Exhibit "L," at 154; Edmonds Report, Exhibit "E," at 8.

96.     On November 30, 2007, counsel for Plaintiff sent GEICO a letter requesting consent for Michael Scott to settle with the third party tortfeasor, Joanne Kinder, for the remaining policy limits of $95,000. Plaintiff's Admissions, Exhibit "A," at ¶15; Rossi Dep., Exhibit "D," at 95; Claims File, Exhibit "H," at GEICO 0488-92.

97.     Counsel for Plaintiff's letter of November 30, 2007, was the first written

request to GEICO that it consent to Michael Scott's settlement with the third-party tortfeasor. Rossi Dep., Exhibit "D," at 95.

98.   On December 6, 2007, counsel for Plaintiff telephoned GEICO and stated that he did "not expect to resolve this case with [GEICO] until sometime next year." In response, GEICO "advised [it] w[ould] wait on the documentation" requested by Tibbs in his letter of July 1, 2007. Claims File, Exhibit "H," at GEICO 0040; Rossi Dep., Exhibit "D," at 98; Cropp Dep., Exhibit "I," at 22-23; Edmonds Report, Exhibit "E," at 8.

99.   On December 6, 2007, GEICO sent counsel for Plaintiff a letter consenting to the settlement of the third party claim against Joanne Kinder and waiving its right to subrogation. Plaintiff's Admissions, Exhibit "A," at ¶16; Rossi Dep., Exhibit "D," at 96; Cropp Dep., Exhibit "I," at 24; Claims File, Exhibit "H," at GEICO 0040-41, 0486-87.

100.   On January 15, 2008, GEICO Continuing Unit Manager Cindy Lamb completed an 18-month review of Plaintiff's claim and instructed Continuing Unit Examiner Evelyn Cropp to secure updated treatment information from Plaintiff. Claims File, Exhibit "H," at GEICO 0041.

101.   On January 16, 2008, GEICO telephoned counsel for Plaintiff and left a voicemail requesting updated medical information. Claims File, Exhibit "H," at

GEICO 0041; Cropp Dep., Exhibit "I," at 26; Rossi Dep., Exhibit "D," at 58;

Edmonds Report, Exhibit "E," at 9.

102.   On February 8, 2008, GEICO telephoned counsel for Plaintiff and left a

voicemail requesting updated medical information. Claims File, Exhibit "H," at

GEICO 0041; Rossi Dep., Exhibit "D," at 59; Cropp Dep., Exhibit "I," at 26;

Edmonds Report, Exhibit "E," at 9.

103.   On March 3, 2008, GEICO telephoned counsel for Plaintiff requesting

updated medical information, at which time counsel for Plaintiff advised that

Plaintiff had undergone shoulder surgery on February 24, 2008. Claims File,

Exhibit "H," at GEICO 0041; Rossi Dep., Exhibit "D," at 61; Cropp Dep., Exhibit

"I," at 26; Silber Dep., Exhibit "L," at 155-56; Edmonds Report, Exhibit "E," at 9.

104.   On April 28, 2008, GEICO called counsel for Plaintiff requesting updated

medical and wage loss information . Claims File, Exhibit "H," at GEICO 0042;

Rossi Dep., Exhibit "D," at 63; Edmonds Report, Exhibit "E," at 9.

105.   On June 16, 2008, counsel for Plaintiff sent GEICO a letter enclosing

supplemental medical records received after May 21, 2007, and stating that he will

forward a comprehensive demand letter later that week. Plaintiff's Admissions,

Exhibit "A," at ¶17; Claims File, Exhibit "H," at GEICO 0483-85.

106.   On June 20, 2008, GEICO noted in the claims file that additional records

had been received from Plaintiff. Claims File, Exhibit "H," at GEICO 0042; Cropp

Dep., Exhibit "I," at 28. Those records included records from Excel Care Pain

Management/Maxime Gedeon, M.D.; Imaging Associates of Hazleton; Allentown

Orthopedic/Kenneth Brislin, M.D.; Robert Marcin, O.D.; and S. Ross Noble, M.D.

107.   On June 27, 2008, GEICO reviewed the records received from Plaintiff on

or about June 20, 2008. Cropp Dep., Exhibit "I," at 32; Claims File, Exhibit "H," at

GEICO 0042; see also Edmonds Report, Exhibit "E," at 9.

108.   On July 30, 2008, GEICO wrote counsel for Plaintiff acknowledging receipt

of the medical records received from Plaintiff on June 20, 2008, and requesting

information in support of the wage loss claim first requested by letter of June 1,

2007. Cropp Dep., Exhibit "I," at 36; Claims File, Exhibit "H," at GEICO 0042.

109.   On September 4, 2008, Claims Home Office attorney, Carl Silber, entered a

note to the claims examiner in the claims log requesting that she "please Continue

To F/u [follow up] to request additional information (wages) Needed To Evaluate

Matter. Thx." Claims File, Exhibit "H," at GEICO 0043; Silber Dep., Exhibit "L,"

at 159-160.

110.   On September 5, 2008, GEICO sent counsel for Plaintiff a letter stating that

it did not have physical therapy records for Plaintiff and requesting the

documentation supporting the wage claim first requested by letter of June 1, 2007.

Plaintiff's Admissions, Exhibit "A," at ¶18; Cropp Dep., Exhibit "I," at 37; Rossi

Dep., Exhibit "D," at 63, 79-80; Claims File, Exhibit "H," at GEICO 0482;

Edmonds Report, Exhibit "E," at 9.

111.   On September 8, 2008, counsel for Plaintiff sent GEICO a letter including

more recent records of Dr. Marcin and Physical Therapy Specialists and the

Supplemental Report of Dr. Noble. He also enclosed an assessment of employment

potential prepared by John S. Risser, with attached Curriculum Vitae, which he

claimed "should serve as wage documentation." Plaintiff's Admissions, Exhibit at

GEICO 0179; Rossi Dep., Exhibit "D," at 110-111.

113.   On September 19, 2008, GEICO noted in the claims file that counsel for

Plaintiff did not provide wage documentation with the submission of September 8,

2008, but, rather, excerpts from a vocational expert's report. Claims File, Exhibit

"H," at GEICO 0044.

114.   On September 19, 2008, GEICO sent counsel for Plaintiff a letter noting that

it did not have a copy of Plaintiff's February 2008 surgery records and requesting a

copy of same. Plaintiff's Admissions, Exhibit "A," at ¶20; Cropp Dep., Exhibit "I,"

at 40-41; Rossi Dep., Exhibit "D," at 66; Claims File, Exhibit "H," at GEICO

0479.

115.   On September 29, 2008, counsel for Plaintiff sent GEICO a letter enclosing

medical records from Plaintiff's February 2008 surgery from Orthopedic

Associates of Allentown and noting that Plaintiff was released to return to work on

August 28, 2008. Plaintiff's Admissions, Exhibit "A," at ¶21; Rossi Dep., Exhibit "D," at 67; Claims File, Exhibit "H," at GEICO 0476-78.

116.   On November 4, 2008, counsel for Plaintiff sent GEICO a letter enclosing the report of Dr. Kenneth Brislin regarding Plaintiff's diagnosis and prognosis of the injuries he received in the July 11, 2006, accident. Plaintiff's Admissions, Exhibit "A," at ¶22; Edmonds Report, Exhibit "E," at 10.

117.   On November 14, 2008, GEICO telephoned counsel for Plaintiff and requested the documents relied upon by Plaintiff's vocational expert in his report but not provided to GEICO. Claims File, Exhibit "H," at GEICO 0045; Cropp Dep., Exhibit "I," at 52-53; Rossi Dep., Exhibit "D," at 82; Edmonds Report, Exhibit "E," at 10.

118.   On November 14, 2008, GEICO sent counsel for Plaintiff a letter requesting additional information to support the wage claim and stating that GEICO may want to retain its own vocational expert to review the information. Plaintiff's Admissions, Exhibit "A," at ¶23; Rossi Dep., Exhibit "D," at 82; Cropp Dep., Exhibit "I," at 57; Claims File, Exhibit "H," at GEICO 0472; Edmonds Report, Exhibit "E," at 10.

119.   On November 19, 2008, counsel for Plaintiff telephoned GEICO and stated that he would provide the documentation referenced in Plaintiff's vocational

10254187v.1

expert's report and requested by GEICO. Claims File, Exhibit "H," at GEICO 0045-46.

120.   On November 19, 2008, counsel for Plaintiff sent GEICO a letter providing "Hourly Employment Summary for the years 2006 and 2007" from Constellation Energy and stating that he would forward Plaintiff's 2007 Federal Income Tax Return and his W-2 when he received those documents. Plaintiff's Admissions, Exhibit "A," at ¶24; Rossi Dep., Exhibit "D," at 82, 83, 84; Claims File, Exhibit "H," at GEICO 0242-243, 0469. No other employment records were ever provided to GEICO by counsel for Plaintiff. Rossi Dep., Exhibit "D," at 84, 85, 141-143; Edmonds Report, Exhibit "E," at 14.

121.   On November 25, 2008, counsel for Plaintiff sent GEICO a letter enclosing Plaintiff's 2007 Federal Income Tax Return. Plaintiff's Admissions, Exhibit "A," at ¶25; Rossi Dep., Exhibit "D," at 40-41; Claims File, Exhibit "H," at GEICO 0469-71.

122.   On December 17, 2008, GEICO telephoned counsel for Plaintiff and reported having reviewed the documentation supplied by Plaintiff by letters of November 19, 2008, and November 25, 2008. Claims File, Exhibit "H," at GEICO 0046; Cropp Dep., Exhibit "I," at 61.

123.   On December 18, 2008, GEICO noted in the claims file that Plaintiff had only provided tax information for 2007 and for no other years referenced in the

report of Plaintiff's vocational expert. GEICO telephoned counsel for Plaintiff and requested Plaintiff's 2006 tax returns. Claims File, Exhibit "H," at GEICO 0046; Edmonds Report, Exhibit "E," at 10.

124.   On December 22, 2008, counsel for Plaintiff sent GEICO a letter enclosing Plaintiff's 2006 Federal Income Tax Return. Plaintiff's Admissions, Exhibit "A," at ¶26. Claims File, Exhibit "H," at GEICO 0465-66.

125.   Plaintiff's bad faith expert has no opinion with respect to the claims handling of GEICO on the Scott UIM claim for the years 2006-2008. Windt Dep., Exhibit "B," at 28.

126.   On January 9, 2009, Plaintiff had not supplied GEICO with complete wage and medical records. Specifically, he had not supplied: records from 2005 spine surgery (see Claims File, Exhibit "H," at GEICO 0631; 0623-85; Rossi Dep., Exhibit "D," at 49-50); medical and employment authorizations (Tibbs Dep., Exhibit "K," at 115-16; Rossi Dep., Exhibit "D," at 27); 2004-2005 tax returns (Rossi Dep., Exhibit "D," at 38-39, 106); records from excavation business (Rossi Dep., Exhibit "D," at 94-95, 111-12); log cabin business records (Claims File, Exhibit "H," at GEICO 0225-35; Rossi Dep., Exhibit "D," at 88; Windt Dep., Exhibit "B," at 132; Edmonds Report, Exhibit "E," at 1, 14-15) ;and employment records from Constellation Energy Group relating to incentive bonus, 401K, and pension contributions, company stock (Rossi Dep., Exhibit "D," at 84, 85, 141-43;

Edmonds Report, Exhibit "E," at 14).

127.   On January 9, 2009, Evelyn Cropp met with Claims Supervisor Lorraine Workman to review and evaluate Plaintiff's claim. Claims File, Exhibit "H," at GEICO 0047; Cropp Dep., Exhibit "I," at 68-69; Deposition of Lorraine Workman, Claims Supervisor, attached hereto as Exhibit "M," at 25-26.

128.   Despite not being supplied all records by Plaintiff, GEICO decided to "Put A Value On The Case W[ith] The Info [It] Ha[d] And Send [a] Req[uest] to [Claims Home Office] To Make An Offer." Workman Dep., Exhibit "M," at 26; Cropp Dep., Exhibit "I," at 68-69; Claims File, Exhibit "H," at GEICO 0047.

129.   On January 20, 2009, counsel for Plaintiff telephoned GEICO requesting an update as to the status of the claim. Claims File, Exhibit "H," at GEICO 0047; see also Cropp Dep., Exhibit "I," at 69.

130.   On or about January 30, 2009, GEICO telephoned counsel for Plaintiff and told him that GEICO evaluated the claim and would seek settlement authority. Plaintiff's Admissions, Exhibit "A," at ¶27; Cropp Dep., Exhibit "I," at 69; Claims File, Exhibit "H," at GEICO 0047.

131.   As of February 2009, Plaintiff had returned to work at Constellation Energy with no restrictions on his ability to work and at a higher rate of pay than before the Accident. See Rossi Dep., Exhibit "D," at 102, 105.

132.   On February 17, 2009, GEICO claims examiner Evelyn Cropp requested

settlement authority from Claim Home Office Counsel Carl Silber up to $55,000

for the UIM claim of Michael Scott.  She evaluated the maximum amount of his

damages as:  Past Lost Wages, $64,000; Neck and Back noneconomic damages,

$25,000; and Shoulder non-economic damages, $60,000. Claims File, Exhibit "H,"

at GEICO 0133-36; Windt Dep., Exhibit "B," at 140-141 and Exhibit 7; Edmonds

Report, Exhibit "E," at 10-11.

133.   At the time of its offer in settlement of February 23, 2009, GEICO had

$55,000 in settlement authority. Cropp Dep., Exhibit "I," at 71; Windt Dep.,

Exhibit "B," at 110; Edmonds Report, Exhibit "E," at 11.

134.   On or about February 23, 2009, GEICO sent counsel for Plaintiff a letter

extending an offer of $30,000 for the UIM claim of Plaintiff. Plaintiff's

Admissions, Exhibit "A," at ¶28; Cropp Dep., Exhibit "I," at 71; Rossi Dep.,

Exhibit "D," at 99; Claims File, Exhibit "H," at GEICO 0464; Edmonds Report,

Exhibit "E," at 11.

135.   "Of course, . . ., the fact that an insurer makes a settlement offer . . . does

not, in and of itself, mean that the amount of the offer was undisputedly owed.

Windt Dep., Exhibit "B," at 31.

136.   There is nothing in the February 23, 2009, settlement offer letter that

conditioned the payment of $30,000 on the receipt of a Release of all claims from

the Plaintiff. Claims File, Exhibit "H," at GEICO 0464; Windt Dep., Exhibit "B,"
at 98, 101.

137.    It is industry practice not to initially offer the highest amount that the insurer
is willing to pay. A fair and equitable settlement is typically achieved, over time,
through a series of offers and counteroffers.  Windt Dep., Exhibit "B," at 33, 99.

138.    GEICO did not have to offer the maximum valuation number from its claim
valuation. Windt Dep., Exhibit "B," at 149.

139.    GEICO's determination that Plaintiff's claim was worth between $125,000
and $150,000 was based upon review of all records provided up to February 23,
2009. Claims File, Exhibit "H," at GEICO 0133-36; see also Edmonds Report,
Exhibit "E," at 10.

140.    GEICO's offer of $30,000 - $50,000 took into account the $95,000 credit to
which GEICO was entitled from settlement with the tortfeasor. The valuation was
comprised of all non-economic damages, including pain and suffering, loss of
consortium, embarrassment, humiliation, disfigurement, anxiety, and distress; as
well as lost wages. Cropp Dep., Exhibit "I," at 61-63, 66; Silber Dep., Exhibit "L,"
at 211; see also Edmonds Report, Exhibit "E," at 11.

141.    At the time GEICO made its offer in settlement of $30,000, Plaintiff had not
supplied GEICO with information necessary for evaluation of the UIM claim and
previously requested from Plaintiff. Specifically, GEICO lacked medical and wage

-38-

record authorizations; Plaintiff's 2004-2005 tax returns; records from Plaintiff's

excavation business; records from Plaintiff's log cabin business; and employment

records from Constellation Energy (including documents relating to Plaintiff's

incentive bonus, 401K, pension contributions, and company stock). See Paragraph

126, supra.

142.   An insurance company is not obligated to accept without question Plaintiff's

determination of what information was relevant to the valuation of the claim.

Windt Dep., Exhibit "B," at 38.

143.   On or about February 23, 2009, counsel for Plaintiff sent GEICO a letter

rejecting the offer in settlement and demanding arbitration. Counsel for Plaintiff

did not lower his demand or ask GEICO to increase its offer. Counsel for Plaintiff

did not request a partial payment. Plaintiff's Admissions, Exhibit "A," at ¶29;

Cropp Dep., Exhibit "I," at 73; Rossi Dep., Exhibit "D," at 100, 101; Claims File,

Exhibit "H," at GEICO 0456; Windt Dep., Exhibit "B," at 101; Edmonds Report,

Exhibit "E," at 11.

144.   Counsel for Plaintiff did not explore whether GEICO had any additional

authority to settle the case without going to arbitration. Rossi Dep., Exhibit "D," at

100; Windt Dep., Exhibit "B," at 101; see also Edmonds Report, Exhibit "E," at

11.

145.   Prior to receiving the notice of intent to arbitrate the claim pursuant to the

Policy dated February 23, 2009, GEICO did not have subpoena power. See Rossi
Dep., Exhibit "D," at 140-41.

146.   On or about February 25, 2009, GEICO assigned defense of the UIM claim
to John T. McGrath, Esquire, of the law firm of Marshall, Dennehey, Warner,
Coleman & Goggin. Claims File, Exhibit "H," at GEICO 0049-51; Windt Dep.,
Exhibit "B," at 101; Edmonds Report, Exhibit "E," at 11.

147.   In the claims log notes for February 26, 2009, claims examiner Jean Siwula
stated that "This Is [a] Case Where We Have Causality [sic] Questions W/respect
To Low Back Due To Prior Condition." Claims File, Exhibit "H," at GEICO 0050.

148.   In the claims log notes for February 26, 2009, claims examiner Jean Siwula
stated that "Plt Also Has Significant Claim For Alleged Lost Wages/benefits And
Future Lost Earnings Which Needs To Be Investigated . . . .Once We Have
Additional Rcrds We Will Need To Discuss . . . Whether We Want To Retain A
Vocational Expert." Claims File, Exhibit "H," at GEICO 0050. GEICO retained
Vocational Expert Bill Walker to evaluate Plaintiff's wage loss claims. See Claims
File, Exhibit "H," at GEICO 0061-62.

149.   On or about March 12, 2009, GEICO selected a defense arbitrator. Claims
File, Exhibit "H," at GEICO 0051.

150.   "Once a[n] . . .arbitration proceeding is commenced seeking insurance
benefits, normal claims handling is superseded by the litigation proceeding.  The

-40-

insurer retains counsel, and the insurer then relies upon its counsel to handle

discovery in the context of the litigation proceeding.  Accordingly, properly

analyzed, an insurer cannot be guilty of bad faith because it does not conduct its

own investigation, but instead relies upon its counsel to conduct an investigation

that is appropriate in the litigation context." Windt Dep., Exhibit "B," at 33.

151.   GEICO did not act in bad faith with respect to discovery after February

2009. Windt Dep., Exhibit "B," at 102.

152.   The GEICO Policy does not require the insurer to make a partial payment or

a partial assessment of damages. Windt Dep., Exhibit "B," at 75.

153.   It is GEICO procedure not to make a partial payment in UIM claims. Silber

Dep., Exhibit "L," at 225.

154.   There is no statute in Pennsylvania requiring an insurer to make a partial

payment of an undisputed amount in a UIM claim. Windt Dep., Exhibit "B," at 75.

155.   Zappile v. AMEX Assurance Co., 928 A.2d 251 (Pa. Super. 2007), stands

for the proposition that an insurer does not have to make a partial payment even if

an insured asks for a partial payment. Windt Dep., Exhibit "B," at 69.

156.   Keefe v. Prudential Property and Casualty Co., 203 F.3d 218 (3rd Cir. 2000)

states that two requirements must be met for a partial payment to be due.  First, the

insured must request a partial payment and second there must be an undisputed

amount. Windt Dep., Exhibit "B," at 72.

-41-

157.  Scott's counsel never requested a partial payment. Scott's counsel and

GEICO never agreed upon an undisputed amount. Windt Dep., Exhibit "B," at 74,

101. There was no agreement between GEICO and Scott's counsel as to the

amounts that were due and owing as elements of damages of Scott's UIM claim.

Windt Dep., Exhibit "B," at 94-95.

158.  On or about May 13, 2009, Plaintiff executed a medical records release

authorization to obtain the records of Lehigh Valley Hospital and Wyoming Valley

Pain Center related to Michael Scott's 2005 motor vehicle accident, sought by

GEICO in August 2006. Rossi Dep., Exhibit "D," at 48-49; Edmonds Report,

Exhibit "E," at 11; Claims File, Exhibit "H," at GEICO 0632.

159.  It is prudent and customary for representatives of the insurer to schedule an

EUO after the insurer expected to have collected the insured's medical records and

other pertinent documents. Windt Dep., Exhibit "B," at 32.

160.  On or about June 1, 2009, GEICO took an Examination Under Oath of

Plaintiff. Counsel for Plaintiff and Counsel for GEICO also agreed on the selection

of a neutral arbitrator. Plaintiff's Admissions, Exhibit "A," at ¶32; Rossi Dep.,

Exhibit "D," at 31, 112; Edmonds Report, Exhibit "E," at 11.

161.  The Examination Under Oath ("EUO") confirmed that Plaintiff had an

active lifestyle pre-accident, Plaintiff had ongoing pain and limitations from the

subject accident, Plaintiff had recovered from injuries sustained in the 2005 MVA,

-42-

and Plaintiff was not receiving treatment at the time of the 2006 MVA for the earlier injuries. EUO of Michael Scott, Exhibit "F," at 25, 27-30, 34-37, 46; Windt Dep., Exhibit "B," at 126; Edmonds Report, Exhibit "E," at 11-12.

162.   Plaintiff has worked full time for Constellation Energy at the Panther Creek Energy Facility since approximately 2000. EUO of Michael Scott, Exhibit "F," at 9.

163.   Plaintiff was a plant operator at the time of the Accident. See EUO of Michael Scott, Exhibit "F," at 10.

164.   A plant operator works three twelve-hour day shifts and one eight-hour day shift per week. The next week, the plant operator works three twelve-hour day shifts and one eight-hour night shift.EUO of Michael Scott, Exhibit "F," at 12.

165.   After the Accident itself, Plaintiff was out of work for approximately 30 weeks. EUO of Michael Scott, Exhibit "F," at 41.

166.   After shoulder surgery arising from the Accident, Plaintiff missed approximately 6 additional months of work. EUO of Michael Scott, Exhibit "F," at 43.

167.   Plaintiff lost seniority in his employment due to the Accident. EUO of Michael Scott, Exhibit "F," at 12-14. Examination Under oath of Frank Kuchar, Plaintiff's Supervisor, attached hereto as Exhibit "N," at 10-11.

168.   Plaintiff was a relief plant operator after the Accident. EUO of Michael

-43-

Scott, Exhibit "F," at 10; see also EUO of Frank Kuchar., Exhibit "N," at 6-7.

169.   A relief plant operator "may work day shift one day and then work night shift the next day." EUO of Michael Scott, Exhibit "F," at 12.

170.   A relief plant operator "is a very good paying job." EUO of Michael Scott, Exhibit "F," at 12-13.

171.   There is no difference in the hourly rate of pay between a plant operator and a relief plant operator. EUO of Michael Scott, Exhibit "F," at 15; EUO of Frank Kuchar, Exhibit "N," at 11.

172.   Relief plant operators have overtime work available to them. EUO of Michael Scott, Exhibit "F," at 15-16.

173.   As a relief plant operator, Plaintiff was on call 24 hours a day, 7 days a week, 365 days a year. EUO of Michael Scott, Exhibit "F," at 10; see also EUO of Frank Kuchar, Exhibit "N," at 11, 12.

174.   As a result of the Accident, Plaintiff could not turn overhead valves without assistance or climb ladders without modifying his technique. He was also not able to pursue recreation activities including mountain biking, hiking, and white water rafting or fix his roof. EUO of Michael Scott, Exhibit "F," at 44-45.

175.   The EUO of Plaintiff resulted in an evaluation that Michael Scott was credible and would make an excellent witness before a jury.  Silber Dep., Exhibit

"L," at 215-216, 218-220, 222, 234; Claims File, Exhibit "H," at GEICO 0091-0095; Edmonds Report, Exhibit "E," at 12.

176.   On or about June 9, 2009, counsel for Plaintiff sent GEICO counsel a letter stating for the first time that GEICO is acting in bad faith in failing to tender policy limits to Plaintiff. Plaintiff's Admissions, Exhibit "A," at ¶33; Claims File, Exhibit "H," at GEICO 0438.

177.   Counsel for Defendant, John McGrath, sent counsel for Plaintiff a letter dated June 15, 2009, requesting copies of records of Plaintiff's log home building business. The letter also stated that McGrath did not believe GEICO was acting in bad faith. Claims File, Exhibit "H," at GEICO 0436-37; Edmonds Report, Exhibit "E," at 11.

178.   In the claims activity notes for June 16, 2009, claims examiner Jean Siwula stated that "Mr. Scott Remains Under Medical Treatment For Ongoing Back And Shoulder Problems. He Has Been Diagnosed W/herniation In The Cervical Spine And Re-herniation In His Lumbar Spine. He Does Have A History Of Prior Low Back Problems With Herniation & Surgery. So It Is Uknown The Extent Of Low Back Issues That Are Related To The MVA." Claims File, Exhibit "H," at GEICO 0053.

179.   On July 7, 2009, GEICO obtained for the first time, Plaintiff's Lehigh Valley Hospital Records re: pre-accident 2005 surgery (Claims File, Exhibit "H,"

at GEICO 0631; 0623-0685); prior orthopedic treatment (Claims File, Exhibit "H," at GEICO 0674-0714), and post-accident records of April 20, 2009, and May 20, 2009, relating to lower back pain. Claims File, Exhibit "H," at GEICO 0631-714. Rossi Dep., Exhibit "D," at 49-50.

180.   On or about August 4, 2009, counsel for GEICO sent counsel for Plaintiff a letter making a second request for all of the information on the log cabin building business that Plaintiff participated in as well as any and all records from his excavating business. GEICO counsel also requested the name of the Plaintiff's foreman for the purpose of scheduling his deposition. Plaintiff's Admissions, Exhibit "A," at ¶34; Rossi Dep., Exhibit "D," at 89; Claims File, Exhibit "H," at GEICO 0410; Edmonds Report, Exhibit "E," at 11.

181.   On October 6, 2009, counsel for Plaintiff provided counsel for GEICO for the first time some of the requested information on the log cabin building business, but not all.  Claims File, Exhibit "H," at GEICO 0225-0235; Windt Dep., Exhibit "B," at 132; Edmonds Report, Exhibit "E," at 12, 14; see also Plaintiff's Admissions, Exhibit "A," at ¶35. These records were not supplied to GEICO in a timely manner. Windt Dep., Exhibit "B," at 125. The log cabin building business records were never supplied in their entirety. Rossi Dep., Exhibit "D," at 88; Edmonds Report, Exhibit "E," at 15.

182.   Plaintiff had not signed the purported dealership agreement with the

franchiser for Plaintiff's log cabin home building business. Rossi Dep., Exhibit "D," at 107; Claims File, Exhibit "H," at GEICO 0235.

183.   Plaintiff's dealership agreement with the franchiser for Plaintiff's log cabin home building business provided to GEICO is dated May 8, 2007, for a time period after the date of the subject motor vehicle accident. Claims File, Exhibit "H," at GEICO 0231; Rossi Dep., Exhibit "D," at 108; Edmonds Report, Exhibit "E," at 12.

184.   On October 14, 2009, the parties took the EUO of Plaintiff's shift supervisor, Frank Kuchar. Plaintiff's Admissions, Exhibit "A," at ¶36; Rossi Dep., Exhibit "D," at 113. Edmonds Report, Exhibit "E," at 12.

185.   In his Examination Under Oath, Frank Kuchar testified that that Plaintiff had to become a relief operator on another shift after the 2006 motor vehicle accident because of missing time at work because of that accident. Kuchar testified that Scott could have as much overtime as he wanted to work after he returned to work following his shoulder surgery.  It was clear that Plaintiff's allegation for lost overtime income after he returned to work was without any merit as a consequence of this testimony. EUO of Frank Kuchar, Exhibit "N," at 7, 10, 18, 22, 24, 40; Windt Dep., Exhibit "B," at 133; Edmonds Report, Exhibit "E," at 12.

186.   On or about November 10, 2009, GEICO conducted the independent

medical examination of the Plaintiff with Dr. Benjamin Nakkache. Claim File,

Exhibit "H," GEICO 0098-0103; Edmonds Report, Exhibit "E," at 12.

187.   From the independent medical examination, GEICO confirmed that Plaintiff

had continuing complaints of pain three years later from the 2006 motor vehicle

accident. GEICO learned that Plaintiff was taking pain medication as needed for

his 2006 motor vehicle accident and his lifestyle had become somewhat limited

because of his accident injuries. Claims File, Exhibit "H," at GEICO 0162, 0163,

0164; Windt Dep., Exhibit "B," at 133-34; see also Edmonds Report, Exhibit "E,"

at 12.

188.   GEICO learned that the Accident aggravated the 2005 motor vehicle

accident injury to Plaintiff's back from the 2005 Lehigh Valley Hospital records.

Claims file, Exhibit "H," at GEICO 0094. GEICO confirmed that the 2005

accident did not cause the shoulder injury and need for surgery. Silber Dep.,

Exhibit "L," at 243 with errata sheet at lines 15 and 16; Claims File, Exhibit "H,"

at GEICO 0163, 0166; Edmonds Report, attached hereto as Exhibit "E," at 13.

189.   On or about November 23, 2009, GEICO conducted the vocational interview

of the Plaintiff with William Walker. Claims File, Exhibit "H," at GEICO 0105-

0115; Plaintiff's Admissions, Exhibit "A," at ¶39; Edmonds Report, Exhibit "E," at

12.

10254187v.1

190. As a consequence of this vocational interview, GEICO's evaluation of the Plaintiff's wage loss claim increased from $64,000 to $76,000. Claims file, Exhibit "H," at GEICO 0091-0095; Windt Dep., Exhibit "B," at 134-135; Edmonds Report, Exhibit "E," at 13.

191. On or about October 6, 2009, counsel for Plaintiff sent GEICO counsel a letter enclosing Plaintiff's Social Security report reflecting wages for the years 2005, 2006 and 2007. Rossi Dep., Exhibit "D," at 141

192. The Social Security report reflecting wages for the years 2005, 2006 and 2007 did not contain employee benefits. Rossi Dep., Exhibit "D," at 141-42; Claims File, Exhibit "H," at GEICO 0280-0283.

193. Loss of employee benefits was part of Plaintiff's wage loss claim. Rossi Dep., "D," at 142.

194. GEICO requested documentation from Plaintiff's employer, Constellation Energy, "to confirm the alleged losses of incentive bonus, 401, retirement benefits, and pension contributions and loss of the issuance of company stock." Claims File, Exhibit "H," at GEICO 0494; Rossi Dep., Exhibit "D," at 142.

195. Plaintiff never supplied documentation to confirm the alleged losses of incentive bonus, 401, retirement benefits, pension contributions and loss of the issuance of company stock. Rossi Dep., Exhibit "D," at 143.

196.   On November 24, 2009, GEICO claims examiner Jean Siwula prepared a

Control File Document Transmittal  to Claims Home Office Counsel Carl Silber

requesting settlement authority up to $200,000 for Scott's UIM claim. Claims File,

Exhibit "H," at GEICO 0091-0095.  She evaluated the maximum amount of his

damages as:  Past Lost Wages, $76,000; Neck, Back, and Eye noneconomic

damages, $50,000; Shoulder non-economic damages, $100,000, medical expense

lien, $12,000, and shift change noneconomic damages of $20,000. Id.; Windt Dep.,

Exhibit "B," at 136-142 and Exhibit 7; Edmonds Report, Exhibit "E," at 13, 19. As

such, GEICO increased its November 2009 evaluation of damages over its

February 2009 evaluation of damages of $12,000 for past lost wages, $12, 000 for

medical expense lien, $25,000 for neck, back, and eye noneconomic damages,

$40,000 for shoulder noneconomic damages, and $20,000 for shift change. Windt

Dep., Exhibit "B," at 136, 140-142, and Exhibit 7; Edmonds Report, Exhibit "E,"

at 13.  In short, there was a $109,000 difference in value between the February

2009 damage evaluation and the November 2009 evaluation. Windt Dep., Exhibit

"B," at 140. New information obtained by GEICO influenced the change from the

February 2009 damage evaluation to the November 2009 damage evaluation

including the IME, vocational interview, Examination Under Oath of Plaintiff,

Examination Under Oath of Plaintiff's Supervisor, and Lehigh Valley Hospital

records pre-accident and post February 2009 (confirming prior lumbar disc

10254187v.1

herniation L5/S1, lumbar microdisectomy on May 4, 2005, and that shoulder injury

was not attributable to 2006 Accident). Claims File, Exhibit "H," at  GEICO 0091-

0094; Windt Dep., Exhibit "B," at 151-53; Edmonds Report, Exhibit "E," at 10-13,

19.

197.   "Insurers can ultimately pay sums that they might not owe because it is

believed to be good business or in order to avoid the cost of litigating the issue."

Windt Dep., Exhibit "B," at 43.

IV.   **PRE-ARBITRATION OFFERS**

198.   On November 24, 2009, GEICO's Claims Home Office gave GEICO

$200,000 in settlement authority, valuing the claim at $295,000, given the $95,000

credit from settlement with the tortfeasor. Claims File, Exhibit "H," at GEICO

0091-0095; Edmonds Report, Exhibit "E," at 13; Rossi Dep., Exhibit "D," at 117.

199.   On or about December 1, 2009, counsel for GEICO sent counsel for Plaintiff

a letter offering $120,000 in settlement of the UIM claim taking into account the

$100,000 credit from the underlying third party settlement. Plaintiff's Admissions,

Exhibit "A," at ¶40; Rossi Dep., Exhibit "D," at 115; Edmonds Report, Exhibit

"E," at 5, 13.

200.   On or about December 10, 2009, GEICO increased its offer in settlement to

$150,000. Rossi Dep., Exhibit "D," at 116; Edmonds Report, Exhibit "E," at 5, 13.

201.   On or about December 10, 2009, counsel for Plaintiff sent GEICO counsel a facsimile letter rejecting a $150,000 offer from GEICO and demanding $285,000 as a full and final settlement of the UIM claim. Plaintiff's Admissions, Exhibit "A," at ¶42; Edmonds Report, Exhibit "E," at 13.

202.   GEICO did not have to go with the high number of its settlement authority of $200,000 in making offers.   Windt Dep., Exhibit "B," at 33-34, 149-50.

203.   On or about December 15, 2009, GEICO increased its offer in settlement to $200,000. Rossi Dep., Exhibit "D," at 117; Edmonds Report, Exhibit "E," at 5, 13.

204.   On or about December 15, 2009, counsel for Plaintiff sent GEICO counsel a letter rejecting a $200,000 offer from GEICO and demanding $285,000 as a full and final settlement of the UIM claim. Plaintiff's Admissions, Exhibit "A," at ¶43; see also Rossi Dep., Exhibit "D," at 117-18; Edmonds Report, Exhibit "E," at 5, 13.

## V.   THE ARBITRATION

205.   The parties were unable to reach an agreement concerning the value of Plaintiff's UIM claim prior to arbitration. Rossi Dep., "D," at 7; Edmonds Report, Exhibit "E," at 5.

206.   Prior to arbitration, on December 29, 2009, the parties stipulated to Plaintiff's lost wages from Constellation Energy of $75,000. Rossi Dep., Exhibit "D," at 101.

207.   Prior to arbitration, on December 29, 2009, the parties stipulated to recoverable medical expenses of $14,000. Rossi Dep., Exhibit "D," at 102.

208.   On or about December 29, 2009, the parties arbitrated the matter before a panel of three arbitrators in Pottsville, Schuylkill County, Pennsylvania. See Rossi Dep., Exhibit "D," at 7.

209.   On or about January 15, 2010, the arbitration panel initially awarded $450,000 in damages to Plaintiff. Plaintiff's Admissions, Exhibit "A," at ¶44; Edmonds Report, Exhibit "E," at 5, 13.

210.   The arbitration was conducted pursuant to the Pennsylvania Arbitration Act of 1927. Policy, Exhibit "H," at GEICO 1137; Rossi Dep., Exhibit "D," at 14.

211.   The Pennsylvania Arbitration Act of 1927 provides, in pertinent part, that "the court shall make an order vacating the award upon the application of any party to the arbitration" "where the arbitrators exceeded their powers . . . ." 5 P.S. § 170(d), attached hereto as Exhibit "O"; Rossi Dep., Exhibit "D," at 15.

212.   Counsel for Plaintiff and counsel for GEICO did not inform the Panel that the policy limits on the GEICO insurance policy for UIM benefits were $300,000 before the issuance of the award. Plaintiff's Admissions, Exhibit "A," at ¶45.

213.   On or about February 17, 2012, counsel for Plaintiff sent counsel for GEICO a letter stating that Plaintiff is "willing to accept the additional verdict amount of $55,000 [$455,000 minus the $95,000 credit from tortfeasor] in exchange for

-53-

release of claims for bad faith insurance practices." Letter from David J. Rossi, counsel for Plaintiff , to John T. McGrath, GEICO counsel (dated January 20, 2010), Claims File, Exhibit "H," at GEICO 0300; Rossi Dep., Exhibit "D," at 120-21, 126.

214.   On or about February 8, 2010, counsel for GEICO filed a Petition to Modify the Arbitration Award in the Schuylkill County Court of Common Pleas. Petition to Modify Arbitration Award, attached hereto as Exhibit "P"; Rossi Dep., Exhibit "D," at 25.

215.   On or about February 23, 2010, counsel for Plaintiff and counsel for GEICO filed a stipulation with the Schuylkill County Court of Common Pleas stating that the Award of Arbitrators should be modified or corrected pursuant to 42 Pa. C.S.A. § 7315(a)(iii), Pennsylvania Uniform Arbitration Act, reducing the award to $300,000. Court Document 3-1 at 3; see also Rossi Dep., Exhibit "D," at 19, 20; Edmonds Report, Exhibit "E," at 13.

216.   On or about February 23, 2010, Scott acknowledged receipt of GEICO's check in the amount of $300,000 in full and final settlement of his UIM claim for his policy limits, subject to reserving the right to file a bad faith lawsuit. Claims File, Exhibit "H," at GEICO 0347; see also Rossi Dep., Exhibit "D," at 119.

217.   The arbitration panel awarded Plaintiff $100,000 for lost wages, $125,000 for future loss of wages, and $225,000 for pain and suffering.  Plaintiff Michael

Scott's Response to Defendant GEICO Insurance Company's Requests for Admissions, Exhibit "A," at ¶51.

218.   On November 24, 2009, GEICO had evaluated Plaintiff's lost wages as $75,000, and the pain and suffering and medical lien at $219,000. GEICO assessed no monies to future lost wages because Plaintiff was back at work earning a greater salary than he had pre-Accident and could work as much as he wanted. He had also supplied no proof of loss as to the log cabin building and excavating businesses. Claims File, Exhibit "H," at GEICO 0091-0095; Edmonds Report, Exhibit "E," at 15; see also Rossi Dep., Exhibit "D," at 88-90.

219.   "The insurer cannot be guilty of an unfair practice unless it acted unreasonably, and the fact that there is a large discrepancy between the amount offered and the eventual award does not, of course, necessarily mean that the insurer acted unreasonably." Windt Dep., Exhibit "B,"at 42-43.

220.   Plaintiff's bad faith expert does not criticize the way that GEICO conducted its investigation, discovery, arbitration, or litigation. Windt Dep., Exhibit "B," at 156.

221.   Plaintiff's bad faith expert has no opinion on the claims handling of GEICO after the arbitration award. Windt Dep., Exhibit "B," at 161.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

/s/  Platte B. Moring, III
Platte B. Moring, III, Esquire
Attorney ID Nos. 56122
3701 Corporate Parkway, Suite 300
Center Valley, PA  18034
610.782.4948
moringp@whiteandwilliams.com
Attorneys for Defendant,
GEICO General Insurance Company

Date: November 30, 2012

10254187v.1

# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Scott | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | NO. 3:11-cv-1790 |
| v. | : | |
| | : | (HON. A. RICHARD CAPUTO) |
| GEICO General Insurance Company | : | |
| | : | |
| Defendant. | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Platte B. Moring, III, hereby certify that on this 30th day of November, 2012, I served a true and correct copy of the foregoing DEFENDANT'S, GEICO GENERAL INSURANCE COMPANY, STATEMENT OF UNDISPUTED MATERIAL FACTS upon the following persons listed below via first class United States Mail, postage prepaid and/or via the Electronic Case Filing System of the United States District Court for the Middle District of Pennsylvania:

Warren L. Siegel, Esquire
Frank A. Rothermel, Esquire
Bernhardt, Rothermel, and Siegel
1515 Market Street, Suite 1540
Philadelphia, PA 19102
**Attorneys for Plaintiff**

10254187v.1

**WHITE AND WILLIAMS LLP**


/s/ Platte B. Moring, III
Platte B. Moring, III, Esquire
Identification No. PA56122
3701 Corporate Parkway, Suite 300
Center Valley, PA 18034
610.782.4948
moringp@whiteandwilliams.com
Attorney for Defendant,
GEICO General Insurance Company

10254187v.1