**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL SCOTT,** : | |
| Plaintiff : | CIVIL ACTION NO. 3:11-1790 |
| v. : | (JUDGE MANNION) |
| **GEICO GENERAL INSURANCE COMPANY,** : | |
| : | |
| **Defendant** : | |

# MEMORANDUM[1]

Presently before the court are a series of motions *in limine* filed by the parties to preclude the introduction of various pieces of evidence at trial. The defendant, GEICO General Insurance Company, filed motions *in limine* to preclude the plaintiff's bad faith expert witness, Allan Windt, Esq., from testifying, (Doc. No. 39); to preclude anticipated new testimony, (Doc. No. 41); to preclude evidence of alleged punitive damages, attorneys' fees, cost, interest, and GEICO's net worth, (Doc. No. 43); to preclude evidence of the arbitration award and post-arbitration memorandum, (Doc. No. 45); and to preclude evidence of claim activity during and after the arbitration. (Doc. No. 67). The plaintiff, Michael Scott, has also filed a motion *in limine* to preclude any reference to settlement discussions that occurred after the arbitration

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

award. (Doc. No. 47). The defendant filed a certificate of concurrence in regard to the plaintiff's motion. (Doc. No. 64). As such, the plaintiff's motion *in limine*, (Doc. No. 47), is **GRANTED**. The plaintiff did not concur with the defendant's motion to preclude claim activity that occurred during and after the arbitration, (Doc. No. 67), but did not file a brief in opposition. As such, the motion is deemed unopposed pursuant to MDPA Local Rule 7.6, and is **GRANTED**.

The plaintiff has filed briefs in opposition to three of the defendant's motions, (Doc. Nos. 60, 61, 65), and the defendant filed two reply briefs. (Doc. Nos. 62, 70).

## I. BACKGROUND

The plaintiff and his wife were injured in an automobile accident on July 11, 2006. (Doc. No. 1, Att. 1 ¶ 4). The plaintiff brought a claim against the driver of the automobile that had collided with him and settled that first party claim for $95,000 of the $100,000 insurance policy limit. (Id. at ¶ 5). The plaintiff subsequently made a claim for underinsured motorist (UIM) coverage under his own policy with the defendant. The plaintiff's policy provides for underinsured motorist benefits stacked to $300,000 per person and $600,000 per accident. (Id. at ¶ 5).

After the defendant's motion for summary judgment was granted in part,

the plaintiff's claims for breach of contract and acting in bad faith under Pennsylvania's bad faith statute, 42 Pa.C.S. §8371, are proceeding to trial. (Doc. No. 33). The plaintiff argues that the defendant's bad faith is evidenced by the protracted processing of his claim that included several settlement offers which were unreasonably low considering his injuries. On July 20, 2006, counsel for the plaintiff presented the plaintiff's UIM claim to the defendant seeking to collect proceeds at the policy limit of $300,000. (Doc. No. 24 at ¶ 22).

On or about June 1, 2007, the defendant determined the appropriate compensation for the plaintiff's injury was less than $100,000 and therefore was fully covered by the other driver's policy. Over the next twenty months the defendant continued to investigate the claim and receive additional information from the plaintiff. (Doc. No. 24 at ¶¶ 93-126; Doc. No. 25 Att. 4 at 6-7). On or about February 23, 2009, the defendant extended and the plaintiff rejected a settlement offer of $35,000 based on the information presented in the additional documentation collected during the intervening period. (Doc. No. 24). On or about December 1, 2009, based on the newly acquired information, the defendant extended an offer of $120,000 to settle the claim. (Doc. No. 24 at ¶199). On December 10, 2009 the defendant increased its offer to $150,000. (Id. at ¶200). The plaintiff decreased his demand of $300,000 to $285,000, but the parties were unable to settle the matter. (Id. at

3

¶ 201).

On or about January 15, 2010, an arbitration panel awarded the plaintiff $450,000 in damages. (Id. at ¶ 209). The award was eventually molded to reflect the policy limit of $300,000. (Id. at ¶ 215). After the arbitration hearing, the defendant's claims examiner, assigned to the plaintiff's case, authored a memorandum regarding the arbitration proceedings. (Doc. No. 51, Att. 1). The last sentence of that report reads: "Our pain and suffering evaluation was only $6K less than that of the arbitration panel." (Id.). The arbitration panel determined the value of the plaintiff's pain and suffering to be $225,000, thereby making the defendant's alleged valuation $219,000. (Id.). On or about February 23, 2010, the defendant paid its full policy limit in the amount of $300,000 to the plaintiff. (Id. at ¶ 216).

The plaintiff hired Allan D. Windt, a bad faith expert with extensive experience in the insurance industry, to formulate an opinion regarding the defendant's conduct. (Doc. No. 39, Exh. A). He is a former attorney who has handled more than 10,000 insurance claims as an independent adjuster and has also authored a book on insurance claims and disputes. (Id.). He composed a report on the plaintiff's behalf and concluded that the defendant acted in bad faith. (Id.). In sum, the report discusses what information the defendant had at various points in the process and compares that information to the defendant's settlement offers. (Id.). He discusses what the defendant

4

knew or was aware of at several different times, (Id., ¶7, 8, 9, 12), interprets the defendant's claim policy, (Id.,¶ 10), and makes several conclusions about what constitutes "bad faith" in these circumstances. (Id., ¶14, 15).

As an example, he notes that on February 23, 2009, the defendant had enough information to know that the plaintiff sustained $141,963 in damages. (Doc. No. 39, Exh. A, ¶8). He then concludes that, given the $95,000 the plaintiff received from the other insurance company, the defendant "undisputedly owed" the plaintiff $46,963. (Id., ¶9). However, he claims the defendant acted in bad faith because the insurance company offered him $30,000 conditioned upon the plaintiff signing a release. (Id.). According to his report, if the funds are undisputably owed, an insurer acts in bad faith as a matter of law by not immediately paying those funds. (Id., ¶8).

## II. PROCEDURAL HISTORY

This case was commenced on September 27, 2011. (Doc. No. 1). The defendant's filed a motion for summary judgment that was granted in part and denied in part on June 19, 2013. (Doc. No. 33). As mentioned above, the parties have filed a series of motions *in limine*, (Doc. Nos. 39, 41, 43, 45, 47, 68), and briefs in support thereof, (Doc. Nos. 40, 42, 44, 46, 68), in anticipation of trial. The plaintiff filed briefs in opposition pertaining to three of

the defendant's motions, (Doc. Nos. 60, 61, 65), and the defendant filed reply briefs addressing two of the plaintiff's briefs in opposition. (Doc. No. 62, 70). The motions are now ripe for the court's decision.

## III. DISCUSSION

### A. The Plaintiff's Bad Faith Expert

The admission of an expert witnesses's testimony rests within the sound discretion of the District Court. *Seese v. Volkswagenwerk A.G.*, 648 F.2d 833, 844 (3d Cir. 1981). "When a witness is offered as an expert, the first question the trial court should ask is whether the subject to be addressed by the witness is 'so distinctly related to some science, profession, business or occupation' that it is beyond the understanding of the average layperson." *Bergman v. United Services Auto. Ass'n*, 742 A.2d 1101, 1105 (Pa. Super. 1999)(quoting *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 440 (Pa. Super. 1987)). When a court answers that initial question in the affirmative, then it is necessary to analyze whether the proposed expert has sufficient skill, knowledge, or experience such that his or her opinion will aid the trier of fact in determining the truth. *Bergman*, 742 A.2d at 1105; *see U.S. v. 60.14 Acres of Land, More or Less, in Warren and McKean Counties, State of Pa.*, 362 F.2d 660, 667 (3d Cir. 1966). The *Bergman* court, in addressing the need

6

for a bad faith expert framed the issue well, stating:

> Necessity is fundamental to the admissibility of opinion evidence. If the facts can be fully and accurately described to the fact-finder, who, without special knowledge or training, is able to estimate the bearing of those facts on the issues in the case, then the opinions of witnesses are inadmissible because they are unnecessary in the search for truth.

*Id.* (citations omitted). In a case where bad faith is alleged, industry standards are irrelevant because "[b]ad faith is a legal concept of general application." *Dattilo v. State Farm Ins. Co.*, 1997 WL 644076, *5 (E.D. Pa. October 17, 1997), *aff'd*, 168 F.3d 478 (3d Cir. 1998).

The defendant claims that because the subject matter of the expert's report and findings, namely whether the defendant acted in bad faith, are "readily understandable by a lay person," the expert's opinion is inadmissible pursuant to Rule 702 of the Federal Rules of Evidence. (Doc. No. 40). The plaintiff contends the testimony is admissible and would aid the jurors in making a determination as to whether the defendant acted in bad faith between February 23, 2009 and December 2009. (Doc. No. 61).

The defendant points the court to several cases out of the Eastern and Western Districts of Pennsylvania in support of its position. In *Dattilo*, that court determined bad faith "does not require that scientific, technical or specialized knowledge be presented to assist the trier of fact. The [expert]

7

witness' opinion is nothing more than subjective speculation unsupported by any scientific or specialized knowledge." 1997 WL 644076 at *5. *Dattilo* was cited by *Bergman*, where that court explicitly held that expert testimony is not necessary to demonstrate bad faith. 742 A.2d at 1107. In canvassing cases from various other jurisdictions, the Pennsylvania Superior Court determined most courts concluded that "generally, it is within the capability of the fact finder, unaided by expert testimony, to assess whether an insurer acted in bad faith or breached its duty of care." *Id.*

*Smith v. Allstate Ins. Co.*, 912 F. Supp. 2d 242 (W.D. Pa. 2012), thoroughly discussed reasons for excluding a bad faith expert. That court noted the bad faith issues were not scientific in nature, the evidence in the expert report could be presented through other witnesses, and the expert's conclusions usurped the jury's fact-finding duty. *Id.* at 251. The court concluded that the "average juror is capable of analyzing and drawing conclusions about much of the information analyzed by and many of the conclusions drawn" by the expert. *Id.* The defendant also cites *Schifino v. Geico General Ins. Co*, 2013 WL 2404115 (W.D. Pa. May 31, 2013), a case that relied upon the *Smith* decision. That court excluded a bad faith expert from testifying, finding "[a] reasonable juror certainly possesses the requisite knowledge to assess the bad faith allegation, which is equally neither

particularly complex nor scientific." *Id.* at *2.

As in *Smith*, the plaintiff's expert would be offering opinions about whether various offers to settle were reasonable by presenting and analyzing evidence admissible through other witnesses. He would then draw conclusions about whether the defendant's conduct constitutes bad faith. He would not be presenting anything about industry standards, as they are irrelevant in this type of case, nor delving into matters that are scientific in nature.

The plaintiff fails to point out how the expert is in any better position than the jury to compare the defendant's offer with the information provided to the defendant at various times. The plaintiff also fails to demonstrate how or why this case should be differentiated from *Smith, Schifino*, or *Dattilo*.

The jury's duty will be to determine whether the defendant's offers to settle were reasonable and made in good faith at various times. If allowed to testify, the expert could wrest away the jury's role as finder-of-fact. A reasonable juror is capable of determining what the defendant knew, how the claim was evaluated, and whether, in light of that information, the defendant's actions constituted bad faith. As such, an expert is unnecessary. The defendant's motion *in limine* to preclude the plaintiff's expert from testifying is **GRANTED**.

### B. The New Testimony

The defendant further seeks to restrict the "new testimony" of the plaintiff, his wife, his treating physician, his treating optometrist, his vocational expert, and his shift supervisor. (Doc. No. 42). The defendant contends that because of the nature of this bad faith claim, those witnesses should only be allowed to read their depositions and reports appearing in the insurance claim file into the record. (Id.). The crux of the defendant's argument focuses on the plaintiff's burden to demonstrate "that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). Stemming from that requirement, the defendant claims the testimony is not relevant and is inadmissible under Rule 401 of the Federal Rules of Evidence. In the alternative, the defendant argues that it's probative value is severely outweighed by its prejudicial nature, making it inadmissable under Rule 403. Although the defendant also claims the testimony is "contrary to law," this argument is essentially identical to the relevance issue.

The defendant's concern about live testimony is that "the jury would be allowed to hear Plaintiff's fresh re-telling of his pain and suffering and corroborate that testimony" through other witnesses, thereby severely

prejudicing its case. (Doc. No. 42). Just because the method of conveying evidence is unfavorable to one party does not make it inadmissible. All evidence is inherently prejudicial to one party or the other. *See McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 923 (3d Cir.1985) ("Virtually all evidence is prejudicial or it isn't material.").

The court finds no reason to preclude the live testimony of a witness who is available for trial. "It is plain that the Federal Rules evince a clear preference for the use of live testimony at trial." *Holbrook v. Woodham*, 2009 WL 8536746, *1 (W.D.Pa. June 17, 2009) (citing 8A Wright & Miller, Federal Practice and Procedure §2142 (2008) ("The restrictions imposed by Rule 32 make it clear that the federal rules have not changed the long-established principle that testimony by deposition is less desirable than oral testimony and should ordinarily be used as a substitute only if the witness is not available to testify in person.")); *see also Weiss v. Wayes*, 132 F.R.D. 152, 154 (M.D.Pa. 1990). Moreover, "[a]llowing a party to use a deposition over the live in-court testimony of an otherwise available witness would effectively eviscerate the other provisions of Rule 32(a)(4) and would undermine the importance of presenting live testimony." *Kirby v. J.C. Penney Corp.*, Inc., 2009 WL 3651199, *2 (W.D.Pa. Oct. 29, 2009)(citing *Weiss*, 132 F.R.D. at 152).

"The broad language of section 8371 was designed to remedy all

11

instances of bad faith conduct by an insurer, whether occurring before, during, or after litigation." *Thomer v. Allstate Ins. Co.*, 790 F.Supp. 2d 360, 370 (E.D. Pa. 2011)(citing *Bombar v. W. American Ins. Co.*, 932 A.2d 78, 92 (Pa. Super. 2007). "Bad faith conduct also includes `lack of good faith investigation into facts, and failure to communicate with the claimant.' " *Johnson v. Progressive Ins. Co.*, 987 A.2d 781, 784 (Pa. Super. 2009)(quoting *Condio v. Erie Insurance Exchnage*, 899 A.2d 1136, 1142 (Pa. Super. 2006). Bad faith may occur when an insurance company makes an inadequate investigation or does not perform sufficient legal research regarding a coverage issue. *Smith,* 904 F.Supp. 2d at 524.

As the cases cited above demonstrate, bad faith is a broad concept and includes an insurance company's investigative practices. The court agrees that the plaintiff's wife should be precluded because she never communicated with the defendant about the plaintiff's injuries. However, the other witnesses will be allowed to testify as to the plaintiff's injuries stemming from this accident so the jury can determine what information the defendant had and whether the defendant's investigation, i.e. the assembly of the claim file, was done in good faith.

The plaintiff bears the burden of showing bad faith by clear and convincing evidence. Allowing the jury to experience this case through reports

12

and depositions would significantly hinder the presentation of evidence, rendering the use of live testimony nearly meaningless. The court will not require the witnesses to simply read documents to the jury. Further, forcing the plaintiff or any other witness to read a transcript of answers to defense counsel's cross examination during a deposition will eliminate the plaintiff's ability to control the order, manner, and method of presenting evidence. The plaintiff will be allowed to present his case as he wishes, not within the parameters of the defendant's claim procedures or a pre-trial discovery tool. Any evidence that the defendant claims is new or not contained in the claim file can be handled appropriately during the defendant's cross examination.

This motion, if granted in full, may also have wider implications. It would encourage insurance companies to collect relevant information in the most impersonal and detached manner, thereby requiring a jury to sift through piles of paper rather than hear live testimony from those affected. The court is not prepared to abdicate its role as evidentiary gatekeeper to an individual insurance company's claim evaluation process. Juries are entitled to receive evidence, evaluate credibility, and determine the facts in question. *U.S. v. Vitillo*, 490 F.3d 314, 325 (3d Cir. 2007). The jurors will be afforded such an opportunity in this matter.

For the reasons articulated above, the defendant's motion *in limine* to

13

preclude new testimony is **GRANTED IN PART** as to the testimony of the plaintiff's wife. In all other respects, the motion is **DENIED**.

### C. The Arbitration Award and Post-Arbitration Memo

The defendant argues that the "unlawful" arbitration award of $450,000 and the defendant's post-arbitration memorandum are unlawful, irrelevant, and more prejudicial than probative. (Doc. No. 45). The plaintiff, on the other hand, contends this memorandum constitutes an admission of how the defendant valued the pain and suffering prior to the arbitration. (Doc. No. 65).

"Since a bad faith cause of action [under 42 Pa.C.S.A. §8371] . . . only applies to a denial or refusal to pay benefits under an insurance policy, only [the defendant's] conduct prior to the arbitration panel is relevant." *Kakule v. Progressive Cas. Ins. Co.*, 2008 WL 1902201, *3 (E.D. Pa. April 30, 2008). Pennsylvania Courts have allowed evidence of a defendant's post-arbitration bad faith in cases where the defendant challenges the arbitrators award, which is not the case here. *Terletsky,* 649 A.2d at 690-91. The Third Circuit has also determined that if an arbitration award is below the plaintiff's demand, a rational jury could still find that a defendant acted in bad faith by not making a reasonable offer to pay for the plaintiff's damages. *Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 234-35 (3d Cir. 1997). As *Klinger* makes clear, regardless of the arbitration outcome, the key issue for

the jury is whether the defendant made an offer in bad faith when "the extent of [the plaintiff's] injuries had become clear" and acted "knowingly and recklessly. . . without reasonable basis." *Id.* At 235.

The plaintiff does not allege that the defendant acted in bad faith at any time during or after the arbitration. (Doc. No. 1). Moreover, the plaintiff fails to articulate how this award tends to show the defendant acted in bad faith before the arbitration. "The mere fact that the arbitrators ultimately decided" that the plaintiff was due $450,000 in damages does not alter the fact that the plaintiff must show the defendant did not have a "sufficient basis . . . to offer what was reasonably due." *Klinger*, 115 F.3d at 234-35. As such, the prejudicial nature of the award amount far outweighs the probative value. It will be excluded.

Next, the defendant seeks to preclude the introduction of its own post-arbitration memorandum. (Doc. No. 65, Att. 1). As a whole, the document is essentially a recitation of the arbitration panel's findings and determinations. (Id.). The defendant argues the vast majority of the document is irrelevant and therefore inadmissable. (Doc. No. 46). The court agrees that the arbitration panel became the finder-of-fact and any conclusions drawn from such a hearing would usurp the role of the jury. The plaintiff does not articulate how the vast majority of the memorandum is evidence of the defendant's

15

knowledge or claims evaluation process, making its probative value minimal. As such, the arbitration memorandum, (Doc. No. 65, Att. 1), save for the last sentence discussed below, is excluded.

The parties next focus on a single line of the defendant's arbitration memorandum. (Doc. No. 65, Att. 1, p.4). The sentence relates to the defendant's pre-arbitration valuation of the plaintiff's pain and suffering at $219,000. (Id.). The defendant argues the figure would be "highly prejudicial to GEICO and risk confusing the issues before the jury." (Doc. No. 45). The plaintiff argues that this figure demonstrates that the defendant's pre-arbitration offers of $30,000, $120,000, and $200,000, were made in bad faith. (Doc. No. 65). The court agrees with the plaintiff that the evidence is relevant and admissible. It is an admission by the defendant's claim adjuster, assigned to the case since February 25, 2009. (Doc. No. 65, Att. 2). It qualifies as an admission by a party opponent and appears to relate to the relevant time frame, namely before the parties entered into arbitration. Fed. R. Evid. 801(d)(2). The $219,000 valuation from the memorandum is admissible.

As such, the defendant's motion *in limine* to exclude the arbitration award and post-arbitration memorandum is **GRANTED IN PART** as to the exclusion of the arbitration panel's award and findings reflected in the

defendant's post-arbitration memo and **DENIED IN PART** as to the defendant's $219,000 valuation of the plaintiff's pain and suffering prior to arbitration.

IV.     **CONCLUSION**

For the reasons discussed above, the plaintiff's motion *in limine*, (Doc. No. 67), is **GRANTED**. The defendant's motion *in limine* to preclude the plaintiff's bad faith expert witness, (Doc. No. 39), is **GRANTED**. The defendant's motion *in limine* to preclude the plaintiff from introducing "new testimony," (Doc. No. 41), is **GRANTED IN PART** as to the plaintiff's wife's testimony, but is **DENIED** in all other respects. The defendant's motion *in limine* to preclude the arbitration award and post-arbitration memorandum, (Doc. No. 45), is **GRANTED IN PART** as to the arbitration award and the post-arbitration memorandum and **DENIED IN PART** as to the defendant's pain and suffering valuation of $219,000. Finally, the defendant's motion *in limine* to preclude evidence of claim activity that occurred during and after the arbitration, (Doc. No. 67), is **GRANTED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: November 15, 2013**
O:\Mannion\shared\MEMORANDA - DJ\2011 MEMORANDA\11-1790-02.wpd